UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Frontier Communications of America, Inc., and The Southern New England Telephone Company, and SNET America, Inc., | ) ) ) | Civil Action No. |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Mobi Telecom, LLC; Davinder Singh, an Individual; and John Does 1-10 | ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | February 8, 2022 |
| | ) | |

**COMPLAINT**

Plaintiffs Frontier Communications of America, Inc., The Southern New England Telephone Company, and SNET America, Inc. (collectively, "Frontier" or the "Plaintiffs"), by and through their attorneys, hereby allege against Defendant Mobi Telecom, LLC, Davinder Singh, and John Doe Defendants 1-10, on personal knowledge as to matters relating to themselves and on information and belief as to all other matters, as set forth below:

**NATURE OF THE ACTION**

1.      Robocalls are a scourge on the nation's telecommunications system.

2.      Robocallers torment voice service providers like Frontier and their customers.

3.      It is estimated that there are over 159 million robocalls per day, which is roughly 1,911 robocalls per second.[1]

---

[1] *See* Chris Morris, *Robocalls spike to pre-pandemic levels*, FORTUNE.COM, https://fortune.com/2021/03/05/robocalls-increase-2021-phone-scams-warranty/#:~:text=The%20number%20of%20robocalls%20last,a%2015%25%20increase%20over%20January.

4.      The number of robocalls per year has steadily increased and is in the tens of billions

per year.[2]

5.      The U.S. Federal Communications Commission ("FCC") estimates that robocalls

result in a loss of $3 billion a year to consumers, which does not even include monetary loss caused

by fraud and scams that are perpetrated through robocalls.[3] The money lost due to such fraud

perpetrated by robocall scams are estimated to also be in the billions.[4]

6.      The FCC estimates that companies like Frontier incur a cost of more than $10 per

robocall.

7.      It is well known in the telecommunications industry that robocallers use shell

companies and various methods of subterfuge, which makes them very difficult to apprehend.[5]

8.      The Industry Traceback Group, an industry-specific organization responsible for

monitoring developments in the telephone industry and how that industry is affected by

robocallers, issued a report with troubling findings about the harmful effect of robocallers and

those who enable them.  *See* https://issuu.com/ustelecom/docs/ust-1133_itg_report2020-singles-2.

---

[2] *See* Mike Snider, *Robocalls rang up a new high in 2019. Two or more daily is average in some states*, USATODAY.com, https://www.usatoday.com/story/tech/2020/01/15/robocalls-americans-got-58-5-billion-2019/4476018002/.

[3] *See* Bebette Boliek & Eric Burger, *Beating Back Unwanted Calls*, FCC.GOV, https://www.fcc.gov/news-events/blog/2019/06/05/beating-back-unwanted-robocalls.

[4] *See* Tim Harper, Why *Robocalls Are Even Worse Than You Thought*, CONSUMERREPORTS.ORG, https://www.consumerreports.org/robocalls/why-robocalls-are-even-worse-than-you-thought/.

[5] *See* Adam Felsenthal, *Shell Companies Allow Robocallers to Make Billions of Illegal Phone Calls*, FACTCOALITION.ORG, https://thefactcoalition.org/shell-companies-allow-robocallers-make-billions-illegal-phone-calls/  ("TelWeb was able to use multiple shell companies throughout its scamming system, and the men in charge of connecting TelWeb to telemarketers have a history of being named in previous FTC lawsuits.  Yet they were able to continue in the industry under different names.").

9.      The report found that in 2020, Americans were victims of scam callers 270% more often than in 2019.

10.     It is estimated that ninety percent of scam calls originate abroad, yet robocallers and those working with them like Defendants use ruses to appear on recipients' telephones as coming from U.S. and even local phone numbers.

11.     Seniors are particularly affected, as 89% of seniors receive at least one robocall per week.

12.     As such, the FCC and companies within the telecommunications industry have required voice service providers to take measures to mitigate and report robocallers.

13.     Specifically, the FCC requires all voice service providers to file certifications in the Robocall Mitigation Database regarding their efforts to prevent and curb illegal robocalls on their networks.

14.     Pursuant to 47 CFR § 64.6305(b), all voice service providers must file certifications to this Database providing detailed information regarding their implementation of the STIR/SHAKEN caller ID authentication framework and/or a robocall mitigation program.

15.     Many voice service providers implement caller ID authentication throughout their networks.

16.     Those that do not, however, must certify that they are implementing robocall mitigation practices and detail in the database the specific reasonable steps they are taking to avoid originating illegal robocall traffic.

17.     There are also industry standards promulgated to which most reputable providers adhere. Specifically, providers will disable any robocallers from being able to use the carrier's service and will regularly verify that their subscribers are not robocallers.

18.     The vast majority of providers take their duty to mitigate robocalling activities seriously.

19.     There are, however, a select few providers who—either intentionally or with willful blindness—provide a safe haven for robocallers by giving them telecommunication services and a platform with no oversight from which the robocallers can make their millions upon millions of calls at significant cost to the law-abiding carriers and their subscribers.

20.     These carriers, which include Defendants, based on information and belief, do nothing to verify that their subscribers are not in fact robocallers.  Rather, Defendants either in concert with robocallers or with willful blindless allow robocallers to use their phone services to make millions of illegal robocalls.  The robocallers operating on these carriers' networks purposefully subscribe with these carriers so they can continue their illegal activities with impunity.

21.     Providers like Defendants know they have robocaller subscribers, have the ability to terminate their relationship, yet intentionally choose not to.

22.     The Defendants, based on information and belief, endorse the robocallers' illegal activities so as to increase their profits and hamper the business of law-abiding voice service providers like Frontier.

23.     The robocallers willingly seek out these particular providers such as Defendants who will purposefully or recklessly allow illegal robocalling activities.  Defendants refuse to take simple measures that would reduce the ability of robocallers to operate.  Defendants are so far divorced from the norm and what is required under the law and FCC regulations, it is clear that they are intentionally and recklessly ratifying the illegal conduct of robocallers in an attempt to

4

compete unfairly, interfere with other voice service providers' contracts, facilitate violations of the law, including those related to unfair and deceptive trade practices and consumer protection.

**PARTIES**

24.     The three Plaintiff Frontier entities are telecommunication companies that provide local and long-distance landline telephone service to residential and business customers in Connecticut.

25.     Frontier Communications of America, Inc. is a corporation organized under the laws of the state of Delaware, with its principal place of business at 401 Merritt 7, Norwalk, Connecticut 06851.

26.     The Southern New England Telephone Company is a corporation organized under the laws of the state of Connecticut, with its principal place of business at 310 Orange Street, New Haven, Connecticut, 06510.

27.     SNET America, Inc. is a corporation organized under the laws of the state of Connecticut, with its principal place of business at 401 Merritt 7, Norwalk, Connecticut 06851.

28.     On information and belief, Defendant Mobi Telcom, LLC is a limited liability company organized under the laws of Wyoming.  The address Mobi Telecom, LLC provided to the FCC is 1309 Coffeen Ave #1200, Sheridan, Wyoming 82801.

29.     On information and belief, the sole member of Mobi Telecom, LLC and its chief executive officer is Davinder Singh.

30.     Mobi Telecom, LLC provides services by way of voice over Internet protocol (VoIP), a technology which lets people place phone calls over the Internet.

31.     Mobi Telecom, LLC is a voice service provider as that term is defined in federal regulations and has admitted in communications with federal agencies that it is obligated to and that it purports to implement a robocaller mitigation program as required.

32.     On information and belief, Mr. Singh is an individual who resides and is domiciled at 520 N Sun Dr, Casper, Wyoming 82609.

33.     Mr. Singh has also listed his address with the FCC as being the same address in Wyoming as Mobi Telecom, LLC: 1309 Coffeen Ave #1200, Sheridan, Wyoming 82801.

34.     Upon information and belief, Mr. Singh as the sole member of Mobi Telecom, LLC is responsible for, directs, and participates in all of Mobi Telecom, LLC's activities, including those that are the subject of this lawsuit.

35.     Upon information and belief, there is no differentiation between Mr. Singh and Mobi Telecom, LLC; that is, Mobi Telecom, LLC is Mr. Singh's alter ego.

36.     Defendants John Does 1-10 are companies and individuals who are citizens of another state or country and who reside or have a principal place of business outside of Connecticut.  They are providers from whom robocalls originate and have been directed to Frontier Connecticut subscribers, or are the robocallers themselves.

## JURISDICTION AND VENUE

37.     This Court has original jurisdiction over all the claims in this lawsuit pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

38.     This Court has personal jurisdiction over each Defendant pursuant to Conn. Gen. Stat. § 52-59b.  Defendants transact business in Connecticut by, among other things, intentionally and purposefully directing and routing phone calls to residents in this state.  In particular,

Defendants have deliberately exploited the Connecticut market by directing and routing numerous robocalls to Frontier landline subscribers in Connecticut.  Defendants have committed tortious acts in Connecticut and facilitated violations of the law in Connecticut by working in concert with robocallers as alleged and set forth herein.  Defendants have also caused injury within Connecticut by harming Frontier as well as numerous Frontier subscribers in Connecticut by providing a haven for robocallers to send illegal robocalls to Connecticut businesses and consumers.

39.     Venue is proper in this District under 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

40.     Defendants purposefully allow robocallers to use their service despite actually knowing or willfully disregarding that robocallers are using its service to place illegal robocalls.

41.     Phone calls received by Frontier landline consumers in Connecticut are by robocallers using Defendants' services and systems to make phone calls targeting Connecticut consumers.

42.     Upon information and belief, Defendants receive traceback requests that inform them of suspicious activity using their services and calling upon them to mitigate against robocalls, including to provide information to allow for the identification of robocallers and carriers acting in concert with them.

43.     Upon information and belief, Defendants do nothing to stop robocallers despite receiving notices and being aware that their networks and systems are being used by robocallers.

44.     Upon information and belief, Defendants are little more than a vessel to allow foreign and domestic robocallers to target U.S. and Connecticut consumers with impunity, including Frontier landline customers in Connecticut.

45.     The standard in the telecommunications industry is for providers to take steps to mitigate robocallers from operating on a phone carrier's network.

46.     Frontier has such a program, as do almost all reputable providers.

47.     Frontier is committed to taking reasonable steps to disallow use of its services by robocallers or carriers whom Frontier has identified as likely engaging in or allowing robocalling activities.

48.     Frontier expends significant resources in an effort to stop robocallers from harassing Frontier's landline customers in Connecticut.

49.     On paper, Mobi Telecom, LLC promised to the FCC to follow industry robocall standards, but upon information and belief its commitment was made only to distract regulators and conceal its operations, as Mobi Telecom, LLC undertakes no such robocaller mitigation and willingly or with willful blindness allows robocallers to use its networks.

50.     Mobi Telecom, LLC has never implemented the robocaller mitigation program it publicly committed to implement, and the FCC has noted that Mobi Telecom, LLC has been non-responsive.

51.     Upon information and belief, robocallers from abroad and elsewhere use Defendants' carrier services to direct phone calls to Connecticut Frontier customers and countless others in the state of Connecticut.

52.     Robocallers willingly choose and are given an opportunity to survive and thrive because of providers like Defendants who do nothing to curb robocaller activity on their networks, and who in fact encourage and profit from it.

53.     Robocallers seek out companies and individuals such as Defendants who allow robocallers to run amok and use their services. Defendants provide a platform for foreign robocallers to flood Connecticut consumers with unwanted robocalls.

54.     Defendants profit from and gain a competitive advantage by not having to invest in compliance officials, reap subscriber fees from robocallers, and harm law-abiding voice service providers and their customers.

55.     Defendants' actions, upon information and belief, are part of a symbiotic relationship where robocallers and Defendants work together to help each other survive and thrive among law-abiding providers.  Upon information and belief, Defendants all work on behalf of robocallers and endorse the conduct of robocallers, such that they act as an agent for the robocallers.

56.     Similarly, robocallers ratify and work on Defendants' behalf as an agent as part of this symbiotic relationship.

57.     The flood of robocalling enabled by Defendants also causes a significant psychological toll on Frontier landline customers.

58.     Many Frontier customers receive multiple scam robocalls per day or week, which has caused psychological distress, wasted their time, and required them to take steps to avoid falling prey to robocallers' con games.

59.     In a recent sample of Frontier former landline subscribers who were surveyed, nearly a third stated that they receive more than 20 robocalls each month.

60.     More than half of this recent sample reported that they receive more than 6 robocalls each month.

61.     Some complaints from former Frontier subscribers who recently terminated landline service at least in part because of robocalls include the following:

    a.  "Kept landline off hook because of the robocalls…."

    b.  "My telephone number was added to the 'do not call' list, so how did I still get robocalls?"

    c.  "Repeat callers even after I block the number they are calling from.  They just call from a different number."

    d.  "I hate them and will not have home phone at my new residence I'm tired of robocalls and spam calls[.]"

    e.  "Calls constantly interrupted sleep and relaxing periods of the day[.]"

    f.  "Had to unhook the phone to quit getting the calls all hours of the night[.]"

    g.  "No need for landline.  95+% Robo or telemarketers/scams.  Many show as local number known to us."

    h.  "[T]he robocalls make me ignore my phone when it rings, that leads to the use of messaging within my circle of friends and family.  I notice most of my friends and family do that. Sad!"

62.     Hundreds of Frontier landline customers have terminated their landline service with Frontier at least in part because of harassment from robocallers, causing injury and economic damage to Frontier including the loss of revenue.

63.     Indeed, as one former Frontier landline customer put it: Robocallers "are the main reason I left Frontier."

**CAUSES OF ACTION**

**Count 1**
**Violation of the Connecticut Unfair Trade Practices Act ("CUTPA"),**
**Conn. Gen. Stat. § 42-110a *et seq.***

64.     Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

65.     CUTPA section 42-110g provides in relevant part that: "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42–110b, may bring an action in the judicial district in which the plaintiff or Defendants reside or has their principal place of business or is doing business, to recover actual damages."

66.     CUTPA provides further that "[p]roof of public interest or public injury shall not be required in any action brought under this section," and that "[t]he court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper."

67.     CUTPA section 42-110b in turn provides further that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

68.     Frontier receives numerous calls from Defendants' robocaller subscribers, which causes direct charges and costs to Frontier and Frontier's subscribers, including but not limited to costs to receive and process calls.

69.     Defendants process telephone calls through their networks which allow subscribers to make calls via telephone or over the Internet.   Unlike reputable companies, however, disreputable companies like Defendants and their cohorts are able to provide services at a lower cost and burden and are able to obtain more subscription fees and revenues from robocallers since

11

they do not do anything to stop robocallers and instead allow robocallers to make calls through their services with impunity.

70.     As a result, Defendants gain an unfair advantage in the marketplace over telecommunications companies like Frontier that follow the rules and industry standards.

71.     This is part of Defendants' deceptive and unfair business strategy that unfairly burdens Frontier, as well as Frontier subscribers, with the receipt of countless robocalls and for Defendants to reap increased revenues by allowing robocallers to operate freely and generate thousands upon thousands of automated calls.

72.     Defendants engage in unfair and deceptive trade practices by allowing robocallers to flood Frontier's subscribers with unwanted calls, causing Frontier to lose revenue, customers, and the ability to operate at a lower operational cost.

73.     The deceptive practices by Defendants, which are marketed as lawful and as services not designed to be a safe haven for robocallers and are further in concert with robocallers to direct illegal robocalls to consumers, deceive Connecticut consumers and Plaintiffs by directing illegal robocalls to them and making them believe that Defendants and their robocaller subscribers provide lawful services and comply with federal and state laws and regulations requiring voice service providers to mitigate and prevent illegal robocalling activities.

74.     Defendants take steps to avoid requiring subscribers to comply with state laws and regulations prohibiting illegal telemarketing and robocalls.  Defendants also facilitate, trigger, contribute to, or incite illegal telemarketing and robocalls.

75.     Defendants' conduct facilitates and directly incites, causes, contributes to, and/or triggers violations of state laws and regulations addressing robocallers and telemarketers, including but not limited to Connecticut's Telemarketing Law, Conn. Gen. Stat. section 42-288a

12

and regulations promulgated thereunder.  Defendants and their employees take active steps to facilitate and trigger illegal robocaller and telemarketing activity.

76.     Defendants flout legal requirements relating to robocalls in order to gain a competitive advantage and to deceive consumers and competitors like Plaintiffs.

77.     By their conduct, Defendants have violated CUTPA, and have violated state laws and regulations that also result in a violation of CUTPA, as violations of laws and regulations in a way that deceives consumers and gives Defendants an unfair advantage in the marketplace which also violates CUTPA.

78.     Defendants' conduct offends public policy, is unscrupulous, and causes substantial injury to consumers generally and Frontier.

79.     Frontier is directly harmed by this conduct as it directly results in a loss of Frontier subscribers and prospective subscribers to landline telephone services.

80.     Frontier has suffered actual loss in the form of subscribers who have discontinued their service specifically for the reason of receiving robocalls.

81.     Plaintiffs seek injunctive relief, damages, and all other remedies available under CUTPA, including but not limited to punitive damages, in an amount to be proven at trial.

82.     Pursuant to Conn. Gen. Stat. section 42-110g(c), copies of this complaint will be provided to the Attorney General and the Commissioner of Consumer Protection of the State of Connecticut.

## Count 2
### Tortious Interference With Contractual Relations

83.     Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

84.     Frontier has contracts with its subscribers and potential subscribers to provide landline telephone services.

85.     Defendants are aware of Frontier's contractual relationships and prospective business relationships with its subscribers and potential subscribers and that Frontier's subscribers pay fees for telecommunications services.

86.     In order to interfere with Frontier's contractual and prospective business relationships with its subscribers and potential subscribers, Defendants intentionally permit, incite, facilitate, and trigger illegal robocalls and telemarketing to Frontier's landline telephone subscribers in Connecticut, which causes Frontier's services to be provided in a less efficient manner.  It also causes unwanted and illegal calls to be sent to those customers which discourages them from continuing their services and in some cases cancel their subscriptions with Frontier.

87.     The intentional interference discourages Frontier's subscribers from retaining services with Frontier as its landline phone subscribers become upset with constant robocalls they receive.

88.     Some subscribers have cancelled their landline telephone contracts with Frontier and cited robocalls as a reason for terminating service.

89.     Defendants' conduct is intentional and tortious, and part of efforts to unfairly gain an advantage in the industry, increase operational costs to those in the industry including Frontier, and have subscribers cancel their contracts with Frontier.

90.     Defendants' conduct has no proper justification, and is instead done with malice to hinder, slow down, and increase the cost and burden associated with Frontier's services.

91.     Frontier has suffered actual loss in the form of subscribers who have discontinued their service specifically for the reason of receiving robocalls.

92.     Frontier requests injunctive relief, damages, punitive damages, and all other remedies available under applicable law in an amount to be proven at trial.

## Count 3
### Tortious Interference With  Business Expectancies

93.     Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

94.     Frontier has both an expectancy of and a business relationship with those in need of telephone landline services.

95.     Defendants are aware of Frontier's business relationships and prospective business relationships with its subscribers and potential subscribers, and that Frontier's subscribers pay fees for telecommunications services.

96.     In order to interfere with Frontier's business and potential business relationships with subscribers, Defendants intentionally permit, incite, facilitate, and trigger illegal robocalls and telemarketing to Frontier's landline telephone subscribers in Connecticut, which causes Frontier's services to be provided in a less efficient manner.  It also causes unwanted and illegal calls to be sent to those customers which discourages them from continuing their services and in some cases cancel their subscriptions with Frontier.

97.     The intentional interference discourages customers and potential customers from both signing up for and retaining services with Frontier as its landline phone subscribers become upset with constant robocalls they receive.

98.     Some subscribers have cancelled their landline telephone contracts with Frontier and cited robocalls as a reason for terminating service.

99.    Defendants' conduct is intentional and part of efforts to engage in unfair and deceptive trade practices in the industry, increase operational costs to those in the industry including Frontier, and have subscribers cancel their contracts with Frontier.

100.    Defendants' conduct has no proper justification, and is instead done with malice to hinder, slow down, and increase the cost and burden associated with Frontier's services.

101.    Frontier has suffered actual loss in the form of subscribers who have discontinued their service specifically for the reason of receiving robocalls.

102.    Frontier requests injunctive relief, damages, punitive damages, and all other remedies available under applicable law in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment against Defendants on all counts and the following relief:

A.  A permanent injunction enjoining Defendants and all those acting in concert with Defendants from the conduct alleged herein;

B.  Damages in an amount to be determined at trial;

C.  Punitive damages in an amount to be determined at trial;

D.  Costs and attorneys' fees; and

E.  Any and all other relief that the Court deems appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a jury trial on all

issues so triable in this action.

Date: February 8, 2022                                          Respectfully submitted,

                                                               _____

                                                               Calvin K. Woo (ct24497)
                                                               Kristen G. Rossetti (ct30503)
                                                               VERRILL DANA LLP
                                                               355 Riverside Avenue
                                                               Westport, CT 06880
                                                               Tel. (203) 222-0885
                                                               Fax (203) 226-8025
                                                               cwoo@verrill-law.com
                                                               krossetti@verrill-law.com

                                                               Rubén Castillo (*pro hac vice pending*)
                                                               AKERMAN LLP
                                                               71 South Wacker Drive, 47th Floor
                                                               Chicago, Illinois 60606
                                                               (312) 634-5700
                                                               ruben.castillo@akerman.com

                                                               Ildefonso Mas (*pro hac vice pending*)
                                                               AKERMAN LLP
                                                               750 Ninth Street, N.W., Suite 750
                                                               Washington, D.C. 20001
                                                               (202) 393-6222
                                                               ildefonso.mas@akerman.com

                                                               *Attorneys for Plaintiffs*

20024713_1